CONSOLE MATTIACCI LAW

*Fighting For Employee Rights for Over 30 Years*

1525 Locust Street 9th Floor Philadelphia, PA 19102 (215) 545-7676 www.ConsoleLaw.com
110 Marter Avenue Suite 502 Moorestown, NJ 08057 (856) 854-4000
5 Penn Plaza Suite 1946 New York, NY 10001 (917) 985-7761

Susan M. Saint-Antoine, Esq.
santanto@consolelaw.com

August 17, 2026

**VIA ECF (redacted) and by email to Chambers[1]**
Honorable Joseph F. Saporito, Jr
U.S.D.C. for the Middle District of Pennsylvania – Scranton
235 N. Washington Avenue
Scranton, PA 18501

**Re: Hurley, Judy v. AT&T Corp., *et al.*; C.A. No. 3:25-01755**

Dear Judge Saporito:

Our firm represents the Plaintiff, Judy Hurley, in the above-referenced matter. I am writing in brief response to AT&T's August 6, 2026 letter (ECF 68) regarding the deposition of Thaddeus Arroyo to give you some material information prior to the conference call scheduled for this afternoon at 2:00. My apologies for the delay in responding; I was out last week for a family medical issue.

AT&T's position doubles down on their **fiction** that Plaintiff's employment was terminated because of an individual decision she made to decline relocation to Dallas. The story AT&T tells is that AVP Mary Farnsworth made an "offer" to Plaintiff to move with her job to Dallas and when she rejected the offer, she was "surplussed" (*i.e.,* terminated); AT&T insists that Thaddeous Arroyo (and John Stankey) had no involvement in Plaintiff's individual decision. That is not what happened here. Plaintiff was never told or "offered" to relocate with her job to Dallas. The evidence to date reveals that at the instruction of CEO Stankey, Thaddeus Arroyo looked at data on his business unit and came up with a plan to surplus/terminate the team on which Plaintiff worked regardless of their willingness to relocate. **Mr. Arroyo was in fact personally involved in the decision to surplus Plaintiff's group, and only Mr. Arroyo can speak to his state of mind and intent.**

---

[1] Because of AT&T's indiscriminate "Confidential" designations, Plaintiff has not included the documents and testimony referenced herein and has filed by ECF a redacted version of the letter. She submits the letter in its entirety to the Court by email and will provide the referenced documents and testimony if requested or in support of a formal brief, if necessary.

As the Court is aware from the briefing and argument on AT&T's pending Motion to Dismiss John Stankey as a defendant, it is Plaintiff's contention that the *How and Where We Work* ("HWWW") initiative was intended to reduce the number of older white employees and replace them with younger "diverse" ones. CEO Stankey came out and said as much when he announced HWWW, which coupled a consolidation of physical offices with a Return to Office ("RTO") requirement. His expressed need for AT&T to reflect/mirror/match the intended customer base in terms of age and race was not a one-time slip. Even though AT&T has refused to produce evidence of Stankey's expressed age and race bias other than as specifically referenced in the Amended Complaint, we know that this is something he repeatedly told managers in 2023.[2]

Thaddeus Arroyo, head of the Corporate Strategy and Development business unit in which Plaintiff worked, was a Direct Reporting Officer ("DRO") to CEO Stankey. [redacted] Briefly, and without limitation:

- In [redacted] (although this designation was never conveyed to Plaintiff).

- The change in Plaintiff's initial designation in April, 2023 did not matter anyway because AT&T never made an "offer" to Plaintiff to follow her work to Dallas. [redacted]

---

[2]For example, Plaintiff's second level manager, Patti Migliori, produced in response to an AT&T subpoena an April 27, 2023 email from CEO Stankey in which he expressed that "it's important that the diversity of our employees reflect the diversity of our communities and customers," as well as a printout from the company's "diversity dashboard" tracking percentages of managers in her group by level and race. Another plaintiff in an age discrimination case against AT&T recently filed a sworn Declaration in which she attested that she attended a meeting in November, 2023, during which CEO Stankey expressed words to the effect that the company was underrepresented in the number of employees in their twenties and thirties and stated that "AT&T needed a workforce in terms of age that mirrored the market of the customers they wanted." *Lopez v. AT&T*, D.N.J. 3:26-cv-03561, ECF 25 at ¶32.

- Mr. Arroyo's [redacted] before Ms. Farnsworth received what AT&T falsely characterizes as Plaintiff's rejection of an offer to work in Dallas.

The falsity of AT&T's explanation presented in its letter to the Court, and the involvement of Mr. Arroyo in what really happened, is further shown, *e.g.*, by the official Request for Business Case Approval of the surplus/termination, as well as the sworn testimony and contemporaneous notebook kept by Ms. Migliori. The Request for Business Case Approval -- approved by Ms. Farnsworth, her manager and legal – states that [redacted] Ms. Migliori testified, *e.g.*, regarding instances, reflected in her contemporaneous work notebook, [redacted]

Plaintiff's counsel has attempted to confer with AT&T counsel, but to date they have demonstrated an unwillingness to address that the actual evidence adduced to date demonstrates the falsity of their explanation of Plaintiff's termination as resulting from an individual decision that Plaintiff made rather than a decision -- made in furtherance of the company policy to reduce the number of older white employees -- with which Mr. Arroyo was directly involved and of which he had personal knowledge.

Plaintiff should be permitted to depose Mr. Arroyo. We look forward to discussing this further with Your Honor and AT&T's counsel during this afternoon's call.

Thank you for your consideration.

Respectfully submitted,
/s Susan M. Saint-Antoine
Susan M. Saint-Antoine

SMS/ss
cc: counsel via ECF and email